# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ALAN J. BEST, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:17-CV-23-TLS |
| ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Alan J. Best, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. The Plaintiff claims that he is unable to maintain substantial gainful employment due to limitations brought about by a variety of medical conditions, including diabetes, degenerative disc disease, anxiety, and depression.

## BACKGROUND

On May 27, 2013, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning on May 20, 2013. After his claim was denied initially, as well as upon reconsideration, the Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On January 8, 2015, the Plaintiff, who was represented by an attorney, participated in a video hearing before the ALJ. A vocational expert also testified. On May 21, 2015, the ALJ issued a written decision, applying the well-known five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

At the first step, the ALJ found that the Plaintiff had not engaged in substantial gainful

activity since May 20, 2013, the alleged onset date. At the second step, the ALJ determined that the Plaintiff had severe impairments that significantly limited his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). These severe impairments were insulin dependent diabetes mellitus, degenerative disc disease, chronic right C7 radiculopathy, right carpal tunnel syndrome and ulnar neuropathy, obesity, hypertension, anxiety, and depression. The ALJ determined that these impairments impacted the Plaintiff's ability to lift and carry heavy items, to perform fine finger manipulations, and to perform the mental demands of work in the context of concentrating for extended periods. The ALJ also found that these impairments impacted postural changes. The ALJ discussed several impairments that did not appear to have a lasting effect on the Plaintiff's ability to function, or did not produce symptoms that would interfere more than minimally with his ability to perform work-related activity and, thus, were not severe.

At step three, the ALJ considered whether the Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's impairments did not meet any listings, and noted that there were no acceptable medical sources who opined otherwise.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b). Specifically, he could lift, carry, push and pull ten pounds frequently and twenty pounds occasionally; could sit for six

hours in an eight-hour work day; could stand/walk for six hours in an eight-hour work day; could use his right upper extremity for frequent, but not constant, fine finger manipulation; would be precluded from climbing ladders/ropes/scaffolds; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and could sustain attention to tasks throughout an eight-hour work day, but for less than two hours consecutively on any single task.

At the final step of the evaluation, the ALJ determined that the Plaintiff was not disabled because he was capable of performing the requirements of representative unskilled light occupations such as retail marker, housekeeper/cleaner, dining room attendant, mail sorter, routing clerk, and hand packager.

The Plaintiff sought review of the ALJ's decision by the Appeals Council. In January 2016, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A claimant is disabled only if he shows an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). He has the burden of proving disability. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). He must establish that his physical or mental impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

4

## ANALYSIS

A.  **Residual Functional Capacity**

The Plaintiff asserts that the ALJ committed several errors in assessing the Plaintiff's RFC. First, he maintains that the ALJ's description of the Plaintiff's need to alternate between sitting and standing was defective. The Plaintiff also believes that the ALJ failed to incorporate all of the Plaintiff's supported limitations into the RFC and engaged in the kind of backwards analysis forbidden by *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012). For the reasons that follow, the Court finds that the ALJ's assessment of the Plaintiff's RFC is based on the proper legal criteria, and supported by substantial evidence.

The ALJ determined that the Plaintiff was capable of performing the exertional demands of light work, reduced by several non-exertional limitations. One of these was that he was limited to sitting, as well as standing and walking, for six hours in combination in an eight-hour workday. The Plaintiff maintains that there is an infinite pattern and sequence of positional changes that could occur within the six hour period. He submits that this is fatally defective because "[n]othing in this limitation suggests that Plaintiff has control over when to initiate a postural change and there is no enumeration as to the duration of the particular sitting, standing, and walking periods and there is no enumeration as to how often the position changes are to occur." (Pl.'s Br. 12, ECF No. 19.)

When an RFC contains a sit/stand option, it must specify a particular frequency for changing positions from sitting to standing, or designate that it is intended to be an "at will" option. *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). The ALJ's first hypothetical to the vocational expert mirrored the requirements for light work, with the addition of non-

exertional limitations on use of the body to climb, balance, stoop, kneel, crouch, crawl, and use the fingers for fine activities. (R. 51.) This included the ability to "stand and walk about six hours; sit about six hours." (*Id.*) According to Social Security regulations, "light work" is generally characterized as (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding and turning objects. *See* 20 C.F.R. § 404.1567(b); SSR 83-10 (noting that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and that "[s]itting may occur intermittently during the remaining time"). It was clear from the ALJ's hypothetical that she thought the Plaintiff could do either the standing and walking required of light work, or the sitting that is more often associated with sedentary work.

In a later hypothetical to the vocational expert, the ALJ asked if work was available for an individual who needed the "opportunity to sit or stand at the worker's will." (R. 69.) The vocational expert identified such jobs, and clarified, based on a question from the ALJ, that the minimum amount of time a person would need to maintain a posture before moving was twenty minutes. (R. 70.) Accordingly, not only did the ALJ specifically indicate that the sit/stand option was to be at-will, a particular frequency was attached to further clarify what was intended by at-will. The Court does not find that any further detail was necessary for the vocational expert to determine how the occupational base would be eroded. In any event, the ALJ specifically found that the Plaintiff's RFC did not include a sit/stand option beyond what is already contemplated in the definition of light work: "While the undersigned ***does not find*** the claimant to be so limited, the vocational expert identified jobs that even a person who required a sit/stand option (twenty

6

minutes minimum) could perform, with otherwise the limitations set out above."
(R. 36 (emphasis added).) The Court does not find that the ALJ's description of the Plaintiff's postural limitation was deficient or inadequately defined with regard to frequency.

The Court also concludes that the Plaintiff's second attack on the postural limitations does not necessitate a remand. The Plaintiff ponders how, "[i]f sitting, standing, and walking are done in combination for 6 hours" the ALJ expected the Plaintiff to perform the final two hours of work in an eight-hour day "if he is not sitting, standing, or walking" during those hours. (Pl.'s Br. 13 (complaining that the limitation is "vague, mathematically incoherent, and illogical").) As noted above, the ALJ's hypothetical to the vocational expert was clear. Neither the vocational expert nor the Plaintiff expressed any confusion about the limitation during the hearing. The Plaintiff had the ability to sit for six hours. He also had the ability to stand or walk for six hours. Between the two, more than eight hours of work are covered.

The Plaintiff also claims that the ALJ did not incorporate all of his supported limitations in the RFC, or consider their combined impact on his functioning. When determining a claimant's RFC, the ALJ must consider the combined effect of all impairments, "even those that would not be considered severe in isolation." *Terry*, 580 F.3d at 477 (citing 20 C.F.R. § 404.1523). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The Defendant responds that the Plaintiff's support for this assertion—a list of various diagnoses and subjective complaints—is not accompanied by any evidentiary support that identifies functional limitations that are inconsistent with the ALJ's RFC determination. For

7

example, the Plaintiff argues that the ALJ should have considered his need to take extra breaks for daytime naps. Although the Plaintiff explained at the hearing that he takes naps on certain days under certain circumstances, that is not the same as saying that the Plaintiff would be unable to make it through an eight-hour workday without a nap. On the same page of the record, the Plaintiff clarified that he does not have difficulty staying awake during the daytime. (R. 64.) The only medical evidence that the Plaintiff cites is one statement from a consultative psychologist that the Plaintiff was chronically sleep-deprived due to pain at night. This statement was based on information provided by the Plaintiff. It is not a statement concerning a functional limitation. Moreover, the ALJ specifically mentioned the report of this psychologist, as well as others, when determining the RFC.

The Plaintiff cites to evidence that he experienced photophobia secondary to headaches which should have prompted a limitation concerning exposure to light. However, his support for this claim consists of two pages of evidence, both of which occurred months prior to his alleged onset date. (R. 314, 534.) A follow-up to one of the appointments where the photophobia was mentioned indicated that the Plaintiff had "marked improvement in the head pain." (R. 536.) The Plaintiff has not identified any medical provider or consultant who stated that the Plaintiff should limit his exposure to light. The ALJ mentioned the Plaintiff's headaches, but did not find that they produced symptoms that interfered more than minimally with his ability to perform work-related activity.

The Plaintiff believes that the RFC should have included additional limitations regarding his range of motion, handling and reaching, interaction with others, and concentration. A review of the ALJ's decision shows it to be extremely detailed and thorough. As the ALJ's discussion of

the medical records shows, they did not support the extreme degree of limitation alleged, particularly with respect to the Plaintiff's mobility. The Plaintiff does not expressly disagree with the ALJ's statement that no treating source provided a medical opinion, based on clinical judgment, that his capacities for work are limited. Nor does he disagree that the opinions of the State agency medical consultants were entitled to great weight. In his appeal to this Court, the Plaintiff simply lists a diagnosis, and claims that the ALJ should have incorporated a limitation because of it, without describing how it limited his functioning beyond what was already accounted for in the RFC. Thus, it appears that the Plaintiff's arguments would, in essence, have invited the ALJ to improperly substitute her personal observations for the considered judgments of medical professionals. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

The Plaintiff asserts that his RFC should have accounted for his numerous "bad days" and healthcare provider visits. (Pl.'s Br. 16.) This argument is much like the one regarding naps. The Plaintiff's healthcare visits were scheduled at a time when he did not have to contend with work obligations. There is no evidence that, if the Plaintiff had a work schedule, it could not be accommodated when making appointments.

The Plaintiff does not point to entire lines of evidence that the ALJ ignored, as much as he cites disagreement with the extent of the limitations that the ALJ believed were supported by the evidence. In some cases, it is not even clear what more the Plaintiff believes was necessary to accommodate him. For his difficulties with interaction and concentration attributable to his mental impairments, the ALJ limited the Plaintiff to sustaining attention to tasks less than two hours straight at a time on any single task. (R. 26). The ALJ further noted that the jobs that the

9

vocational expert identified were unskilled. (R. 35, 52, 70). Additionally, in her hypothetical to the vocational expert, the ALJ further limited the Plaintiff to no more than superficial contact with others. (R. 52). The ALJ fulfilled her duty to weigh the evidence, resolve material conflicts, and make independent findings of fact. It would not be appropriate for this Court to now substitute its own judgment for that of the Commissioner.

Taking a different approach, the Plaintiff criticizes the ALJ's RFC determination as using the same type of "backwards" analysis that the Seventh Circuit disapproved in *Bjornson*. In *Bjornson*, the ALJ based his conclusion that the plaintiff could do sedentary work on his determination that she was exaggerating the severity of her headaches. However, the boilerplate language the ALJ used implied that the ability to work was determined first, and then used to determine that the plaintiff was not credible. 671 F.3d at 645. Here, the Plaintiff argues that the ALJ determined the Plaintiff's RFC before she considered the Plaintiffs' diabetes and mental health evidence. The Plaintiff advances this argument based on the placement of the following language in the ALJ's written decision:

> The residual functional capacity set forth above is more consistent with the medical findings, treatment records, overall evidence in the record than the allegations made by the claimant. It has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments as required by Social Security Ruling 96-8p.

(R. 30.) Although the statement came after 4 ½ pages of analysis of the orthopaedic, neurological, pain management, and opinion evidence, the ALJ's discussion of the diabetes and mental health evidence was situated in the decision immediately after this language. The Plaintiff argues that this shows that "[t]he ALJ improperly determined the RFC before critical diabetes and mental health evidence had been properly analyzed and considered from an RFC

10

standpoint." (Pl.'s Br. 14.)

The Court does not agree. The boilerplate language criticized in *Bjornson* was problematic because it is backwards to determine an applicant's ability to work before determining his credibility, but the language suggested that was exactly what the ALJ did. A fair reading of the ALJ's decision here reveals a careful and thorough analysis of all of the evidence in the record to determine the Plaintiff's RFC. The decision does exactly what is required: considers how each impairment impacts the RFC. Separating the discussion into different segments based on the potential impact of an impairment does not prove otherwise. Written legal decisions often state conclusions before the detailed support and rationale for those conclusions are provided, as a way of demonstrating the supporting reasons for the conclusion.

Even if *Bjornson* could be extended to this case by analogy, the ALJ's language would only be problematic if substantial evidence did not support the ALJ's conclusion that the Plaintiff's impairments did not prevent him from performing light work as modified by the RFC. *Cf. Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) (holding that simply using the objectionable boilerplate language "does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination"). Put differently, the ALJ's use of boilerplate language is reversible error only if she did not also give sufficient reasons, grounded in evidence in the record, to support her ultimate determination. *See id.* Here, substantial evidence supports the ALJ's RFC determination.

**B.     The Plaintiff's Prior Work History and Military Service**

The regulations and SSR 96-7p set forth the Agency's policy for evaluating a claimant's symptoms and assessing the credibility of his statements.[1] An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft*, 539 F.3d at 678; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The Plaintiff is not asserting that the ALJ failed to follow the dictates of SSR 96-7p. Rather, she argues that, because the ALJ did not mention or analyze the impact of his work history on his credibility, the "ALJ's entire credibility analysis" is "call[ed] into question." (Pl.'s Br. 18.)

A "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)); *see Singletary v. Sec'y of Health, Educ. & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980) (explaining that claimant's history of performing demanding work over long hours "justifies the inference that when he stopped working he did so for the reasons he testified to"). The Plaintiff is asserting that his favorable work record and military service warranted special mention by the ALJ, and that simply failing to mention it is grounds for reversal. But, work history is just one factor among many, and it is not dispositive. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). As long as substantial evidence supports the ALJ's credibility

---

[1] SSR 96-7p was recently replaced with a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, which more closely follows the Agency's regulatory language regarding symptom evaluation. *See* SSR 16-3P, 2016 WL 1119029, at *1 (Mar. 16, 2016). The substantive aspects of SSR 16-3p do not apply retroactively, so SSR 96-7p still governs this case.

determination, silence on this factor will not negate that evidence. *Loveless*, 810 F.3d at 508.

Here, the ALJ has "explain[ed] her decision in such a way that allows [the court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). The Plaintiff has not challenged the ALJ's statements about the medical record, and an ALJ is entitled to rely on discrepancies between the objective evidence and the Plaintiff's self-reported allegations of pain to find that the Plaintiff may have been exaggerating the symptoms. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (holding that discrepancy between the plaintiff's reports and medical reports supported ALJ's credibility determination). There was nothing patently wrong with the ALJ's comparison of the treatment records to the Plaintiff's asserted disabling back and right leg pain and extreme functional limitations, including his claimed inability to stand for longer than one to two minutes, walk for more than three to four minutes, and sit greater than ten to fifteen minutes. The ALJ also noted the Plaintiff's statement to his providers, which further suggested he was not as limited as he claimed during his testimony. The ALJ's silence about the Plaintiff's work history is not enough to negate the substantial evidence supporting the adverse credibility finding.

**CONCLUSION**

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

SO ORDERED on December 21, 2017.

       s/ Theresa L. Springmann
      CHIEF JUDGE THERESA L. SPRINGMANN
      UNITED STATES DISTRICT COURT